551 So.2d 322 (1989)
Jean BUSBY, et al.,
v.
TRUSWAL SYSTEMS CORPORATION.
87-1095.
Supreme Court of Alabama.
September 15, 1989.
Richard W. Bell of Bell, Maples & Associates, Pelham, for appellants.
John W. Clark, Jr. of Clark & Scott, and Judy Whalen Evans of Harris, Evans & Downs, Birmingham, for appellee.
PER CURIAM.
This appeal is from a summary judgment for the defendant in an action alleging the torts of invasion of privacy and outrageous conduct. The principal issues are whether *323 the action is barred by the exclusivity provisions of the Workmen's Compensation Act and whether the defendant employer can be held liable for the alleged intentional torts of its employee.
Jean Busby, Melanie Hale, Doris Money, and Bobbie Pitts brought this action against DuWayne Deaton and Truswal Systems Corporation, alleging sexual harassment, which they claim constituted outrageous conduct and an invasion of their right to privacy. The plaintiffs amended their complaint to add as additional plaintiffs Lisa Livingston and Sandra Clements. Hale subsequently withdrew as a party plaintiff. Deaton died on March 13, 1987, and was voluntarily dismissed as a defendant. The trial court entered summary judgment for Truswal.
The plaintiffs were employed by Truswal at its Birmingham plant; they, along with Hale, were all of the female employees at the plant, at which about a dozen people worked. Deaton was employed as the supervisor of the Birmingham plant. The plaintiffs allege that, during the time that Deaton was their supervisor, Deaton repeatedly subjected them to sexual harassment. The plaintiffs also allege that they alerted Deaton's immediate supervisor, Frank Fairley, of Deaton's conduct, but that Fairley did nothing to alleviate the situation. Fairley had been the plant supervisor in Birmingham until he was promoted to a position in Texas supervising seven Truswal plants, including the Birmingham plant.
The plaintiffs first argue that the trial court erred in granting Truswal's motion for summary judgment on their claim of invasion of the right to privacy.
Acts constituting an invasion of privacy have been set out by this Court:
"`It is suggested in Prosser, Law of Torts 637-39 (2nd ed.1955), that the invasion of privacy tort consists in fact of four distinct wrongs, (1) "the intrusion upon the plaintiff's physical solitude or seclusion," (2) "publicity which violates the ordinary decencies," (3) "putting the plaintiff in a false but not necessarily defamatory position in the public eye," and (4) "the appropriation of some element of the plaintiff's personality for a commercial use." We think this analysis fundamentally consistent with our statement in [Smith v.] Doss, [251 Ala. 250, 37 So.2d 118 (1948)] and reaffirmed in Abernathy [v. Thornton, 263 Ala. 496, 83 So.2d 235 (1955)], adopted from 41 Am.Jur. 925, that the right of privacy is "`the right of a person to be free from unwarranted publicity,' or `the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities.'"'"
Cates v. Taylor, 428 So.2d 637, 639 (Ala. 1983), quoting Norris v. Moskin Stores, Inc., 272 Ala. 174, 176-77, 132 So.2d 321, 323 (1961) (emphasis in Norris). See also Hogin v. Cottingham, 533 So.2d 525 (Ala. 1988); Phillips v. Smalley Maintenance Services, Inc., 435 So.2d 705 (Ala.1983).
It is clear that the plaintiffs are basing their invasion of privacy claim on the first category of wrongs set forth in Cates. That is, they claim that there was a wrongful intrusion into their private activities.
This Court has held:
"The `wrongful intrusion' prong of the tort of invasion of privacy has been defined as the `intentional interference with another's interest in solitude or seclusion, either as to his person or to his private affairs or concerns.' W. Prosser & W. Keeton, The Law of Torts, p. 851 (5th ed.1984). `[T]here must be something in the nature of prying or intrusion' and `the intrusion must be something which would be offensive or objectionable to a reasonable person. The thing into which there is intrusion or prying must be, and be entitled to be, private.' Id. at 855. Two primary factors are considered in `determining whether or not an intrusion which effects access to private information is actionable. The first is the means used. The *324 second is the defendant's purpose for obtaining the information.' Id. at 856."
Hogin, supra, at 531 (footnote omitted).
"The United States Supreme Court has specifically recognized `marriage' and `sexual' concerns as fundamental rights, entitled to privacy protection. Eisenstadt, Sheriff v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965)." Phillips, supra, at 708.
The question, then, is whether there was an offensive or objectionable prying or intrusion into the plaintiffs' private affairs or concerns. Evidence was presented from which a jury could reasonably find that Deaton: (1) invited Busby and Money to swim in his pool in the nude with him; (2) told Busby that his hands were cold and asked if he could put them in her pockets to keep them warm; (3) told the plaintiffs that he would "put a stick on their machines" so they could masturbate while working; (4) said that he could perform intercourse as fast as one of the machines at the plant could operate; (5) said that he wished that the plaintiffs would come to work braless and wear less clothing; (6) told one of the plaintiffs that if she had not stayed up all night having sex she could do her work properly; (7) told one employee that if she would give him 30 minutes with her that he would fill her pants in nine months for her; (8) acted as if he was going to pinch one plaintiff's breasts with a pair of pliers and with his hands; (9) said that he should send one of the plaintiffs across the street to where a group of men were standing because she stayed sexually aroused all of the time; (10) told one of the plaintiffs that he was very tired and asked her if she would accompany him to the restroom and hold his penis while he urinated; (11) told one of the plaintiffs that her nipples were as large as another employee's entire breasts; (12) attempted to follow one of the plaintiffs into the restroom and when she asked him where he was going, said that he was going to help her; (13) followed one of the plaintiffs one night; (14) said that a table in his office had been damaged when one of the plaintiffs and a male co-employee had sex on top of it; (15) openly stared at the plaintiffs' sexual anatomy; (16) put his arm around the plaintiffs, grabbed their arms, and stroked their necks; and (17) made other lewd remarks and gestures to the plaintiffs. A jury could reasonably determine from this evidence that Deaton pried or intruded into the plaintiffs' sex lives in an offensive or objectionable manner and thereby invaded their right of privacy.
The plaintiffs also contend that the trial court erred in granting Truswal's motion for summary judgment on their outrage claim.
The tort of outrageous conduct was first recognized by this Court in American Road Service Co. v. Inmon, 394 So.2d 361 (Ala.1981), in which the Court held that "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress and for bodily harm resulting from the distress." Id. at 365. In order for a plaintiff to recover, the conduct of the defendant must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." Id. The deposition evidence presented by the plaintiffs presents evidence from which a jury could reasonably determine that Deaton's conduct rose to this level.
Although there was evidence tending to support the plaintiffs' claims against Deaton, he is deceased and was voluntarily dismissed by the plaintiffs from this action. The dispositive issues, therefore, relate to the plaintiffs' attempt to hold Truswal liable based on Deaton's conduct.
Truswal contends that, although there may be a question of fact as to whether an action would lie against Deaton, summary judgment in Truswal's favor was nevertheless appropriate because, it argues, the action is barred by the exclusivity provisions of the Alabama Workmen's Compensation Act.
*325 The exclusivity provisions of the Act are found at Ala.Code 1975, §§ 25-5-52 and 25-5-53. Section 25-5-52 provides:
"No employee of any employer subject to this article, nor the personal representative, surviving spouse or next of kin of any such employee shall have any right to any other method, form or amount of compensation or damages for any injury or death occasioned by any accident proximately resulting from and while engaged in the actual performance of the duties of his employment and from a cause originating in such employment or determination thereof other than as provided in this article."
Section 25-5-53 provides, in part:
"The rights and remedies herein granted to an employee shall exclude all other rights and remedies of said employee, his personal representative, parent, dependents or next of kin, at common law, by statute or otherwise on account of said injury, loss of services or death. Except as provided in this article and article 2, as the case may be, of this chapter, no employer included within the terms of this chapter shall be civilly liable for any personal injury or death of any workman who is an employee of the employer and whose injury or death is due to an accident while engaged in the service or business of the employer, the cause of which accident originates in the employment."
Truswal argues that § 25-5-52 and § 25-5-53 are a complete bar to the plaintiffs' claims against it.
Both § 25-5-52 and § 25-5-53 immunize employers from tort liability when an employee is injured during his employment due to an "accident." "Accident" is defined at Ala.Code 1975, § 25-5-1(8), as "an unexpected or unforeseen event, happening suddenly and violently, with or without human fault, and producing at the time injury to the physical structure of the body or damage to an artificial member of the body by accidental means."
Read literally, the Act provides compensation only for physical injuries to the body and does not provide recovery for purely psychological injuries such as those alleged in the present case. This construction has been adopted by the Court of Civil Appeals. In Magouirk v. United Parcel Service, 496 So.2d 55 (Ala.Civ.App.1986), the Court of Civil Appeals held that the Act does not extend coverage to mental disorders or injuries that have neither produced nor been proximately caused by some physical injury to the body. To hold, as Truswal urges, that employers are immune from all tort claims would mean that in a case where a plaintiff's injuries are purely psychological in nature, the plaintiff would be left with no remedy when he has been subjected to harassment, extreme verbal abuse, or an invasion of his right to privacy.
"Admittedly, this Court does not have the authority to judicially engraft exceptions into the immunity provisions applicable to the employer, Clark v. Chrysler Corp., 342 So.2d 902 (Ala.1977), but neither should it expand the immunity into areas not covered by the Act." Garvin v. Shewbart, 442 So.2d 80, 82-83 (Ala.1983), overruled on other grounds, Lowman v. Piedmont Exec. Shirt Mfg. Co., 547 So.2d 90 (Ala.1989). In Garvin, this Court held that the tort of outrageous conduct is not barred by the exclusivity provisions of the Act. In reaching that decision, the Court noted: "The Act is designed to compensate those who are injured on the job and provides immunity for those employers and carriers who come within the Act.... Conduct constituting the tort of outrageous conduct cannot reasonably be considered to be within the scope of the Act." Id., at 83.
Similarly, in this case, the injury claimed by the plaintiffs is not compensable under the Act. See Magouirk, supra. Accordingly, "[e]xception is thus made to the exclusivity provision of the Alabama Workmen's Compensation Act for purely psychological injuries inflicted during the course of employment; such an action must lie in tort." Note, Testing the Exclusivity Provision of the Alabama Workmen's Compensation Act, 11 Am.J. Trial Advoc., 121, 130 (1987). We hold that the plaintiffs' claims are not barred by the exclusivity provisions of the Alabama Workmen's Compensation Act.
*326 Truswal also contends that summary judgment was appropriate because, it argues, Truswal had no actual knowledge of Deaton's alleged conduct. This Court has held:
"For [a defendant] to become liable for these alleged intentional torts of its agents, the plaintiffs must offer evidence that the agent's wrongful acts were in the line and scope of his employment, Jessup v. Shaddix, 275 Ala. 281, 154 So.2d 39 (1963); Railway Express Agency v. Burns, 255 Ala. 557, 52 So.2d 177 (1950); Perfection Mattress & Spring Co. v. Windham, 236 Ala. 239, 182 So. 6 (1938); Western Union Telegraph Co. v. Hill, 25 Ala.App. 540, 150 So. 709, cert. denied, 227 Ala. 469, 150 So. 711 (1933); or that the acts were in furtherance of the business of [the defendant], Metropolitan Life Ins. Co. v. Carter, 212 Ala. 212, 102 So. 130 (1924); Solmica of the Gulf Coast, Inc. v. Braggs, 285 Ala. 396, 232 So.2d 638 (1970); or that [the defendant] participated in, authorized, or ratified the wrongful acts, Decatur Petroleum Haulers, Inc. v. Germany, 268 Ala. 211, 105 So.2d 852 (1958); C.O. Osborn Contracting Co. v. Alabama Gas Corp., 273 Ala. 6, 135 So.2d 166 (1961)."
Joyner v. AAA Cooper Transportation, 477 So.2d 364, 365 (Ala.1985).
In Joyner, the plaintiffs, employees of AAA Cooper Transportation ("Cooper"), brought an action against Cooper for assault and battery, alleging that Cooper's terminal manager forced or attempted to force them to engage in homosexual acts with him. When notified of the acts, one of Cooper's officers conducted an investigation and informed the general manager that another complaint would result in the terminal manager's being laid off and in a full scale investigation. The general manager told the terminal manager that he would be fired if there was another such complaint and told the plaintiffs that an incident of that nature would not occur again. In fact, no such incident occurred after that. After setting forth these facts, this Court held that Cooper's conduct, when it was notified of the complaints, "can certainly not be characterized as ratification of [the terminal manager's] activities." Id.
The following evidence applies to the plaintiffs' claim that Truswal ratified Deaton's conduct. All of the plaintiffs except Hale gave depositions that are included in the record. The depositions recite incidents of Deaton's sexual harassment beginning in December 1984, shortly after he began working at Truswal. Pitts and Busby both stated that they told Fairley in December 1984 about Deaton's conduct. Busby said that she told Fairley she had a problem and that Fairley replied, "I guess it is DuWayne [Deaton]." She testified that he told her that "He would get to the bottom of it. He would solve the problem." Pitts testified that Fairley told her, Busby, and Money at that time that he wanted them to try and give Deaton a chance.
Pitts testified that she telephoned Fairley in April and June 1985 and asked him to help solve the problem with Deaton. She also wrote letters to him in February and July, mentioning the problems.[1] Hale's father called Fairley at one time to complain about Deaton. Fairley came to Birmingham in July or early August 1985 to talk to the plaintiffs. Busby testified that Fairley said: "Well, I just want you to be aware that Sigmode [Truswal's parent corporation] has been notified of this problem going on, and so has the president of the company. They know what is going on."
Pitts gave the following testimony regarding her meeting with Fairley on that occasion:
"A. He called each and every one of the ladies in the office one by one. And he told me, he said, `Bobbie, don't you know I was checking into this?' And I said, `No.' I said, `We did not know.' I said, `Frank, you know good and well I have never called you that we did not need you.' And I said, `I have never lied *327 to you either.' And he said, `Well, Bobbie, you should have just gave us time.' And I said, `Well, Frank, we was running out of time.' I said, `We had done run our limits with this man.' And so he said, `Well, you know that we will have to take a lie detector test.' And I said, `Well, if I do Mr. Deaton will, too.' I said, `It won't bother me.' I said, `Mr. Deaton will, too.'
"And so he said, `I have tried to get' he said, `I have had truck drivers in here,' and he said, `They haven't heard him say anything like that.' I said, `Frank, do you mean to tell me that he would honestly say that in front, the things that he does about the women, in front of other men and other truck drivers?' I said, `He says it to us while we are working.'"
Fairley's deposition contradicted much of the above evidence. He did state that he was disturbed by the telephone calls that he received and that, as a result of the telephone calls, he returned to Birmingham to try to straighten things out. Fairley further stated that he had filed a report with Sigmode and that he told the plaintiffs that "Sigmode, Truswal, or myself would not tolerate anything of that nature going on." However, Truswal's failure to stop Deaton's alleged behavior would support the inference that Truswal did in fact tolerate it, in spite of Fairley's reassurances.
The above-cited evidence presents a fact question on ratification regarding the invasion of privacy claim. The plaintiffs gave Fairley sufficient information to alert him to the possibility that Deaton was engaging in acts that would constitute an invasion of the plaintiffs' privacy, and Fairley's failure to take effective action causing Deaton to stop that conduct could be found to constitute a ratification of Deaton's alleged invasion of privacy.
There is no evidence, however, that the plaintiffs imparted sufficient information to Fairley for Truswal to be held liable for the tort of outrage. The materials submitted on the summary judgment motion show only that the plaintiffs made generalized complaints to Fairley. Although their depositions detail numerous incidents that are summarized in the list near the beginning of this opinion, there is no indication that the plaintiffs conveyed their complaints to Fairley in any detail. The tort of outrage provides a remedy for "extreme and outrageous conduct," American Road Service Co. v. Inmon, 394 So.2d 361, 365 (Ala.1980), and so should not be the basis for vicarious or respondeat superior liability except in the most compelling circumstances.
Three of the four cases in which this Court has held that the evidence presented a jury question on the tort of outrage have involved corporate defendants: Levite Undertakers Co. v. Griggs, 495 So.2d 63 (Ala. 1986); National Security Fire & Casualty Co. v. Bowen, 447 So.2d 133 (Ala.1983); and Ridout's-Brown Service, Inc. v. Holloway, 397 So.2d 125 (Ala.1981). In each of those cases, the outrageous conduct was perpetrated as a means to further the defendant corporation's business. In Levite, the defendant undertaker refused to release the plaintiff's husband's body until paid for services rendered; in Bowen, agents of the defendant used threatening and assaultive behavior in an attempt to force the plaintiff to drop his claim against the defendant; and in Holloway, the defendant funeral director falsely stated that the body was in an unviewable condition in order to save himself the trouble and expense of preparing the body for viewing. In effect, the jury could have concluded in each of those cases that "this is the way the company does business."
Here, Deaton's conduct was aimed purely at satisfying his own lustful desires; no corporate purpose could conceivably be served by his overtures. The plaintiffs' initial complaints were sufficient to notify Fairley that something was wrong, but not that Deaton's conduct was "so outrageous in character and so extreme in degree as to go beyound all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society," Inmon, supra. This Court has held that several requests by an employer for a female employee to have dinner with him, to kiss him, *328 or to have an affair with him would not support a claim for outrageous conduct (or, in that case, for invasion of privacy). McIsaac v. WZEW-FM Corp., 495 So.2d 649 (Ala.1986). Fairley apparently did some preliminary investigations and then came from Texas to Birmingham in late July or early August to investigate the matter more fully. Those interviews gave Fairley more detailed information on the plaintiffs' complaints. Without giving him time to act after the interviews, however, the plaintiffs filed suit on August 14, 1985.
The Court, in recognizing the tort of outrage in Inmon, supra, made it clear that it is a limited remedy to be applied only in egregious circumstances. The tort of outrage carries punitive damages, which should not ordinarily be imposed against an employer for the personal sexual transgressions of its employees. Because Deaton clearly was not acting in furtherance of Truswal's business by engaging in the alleged conduct, because Fairley was not initially told the details or the full extent of that conduct, and because the plaintiffs did not allow Fairley time to correct the situation after detailing their complaints, Truswal cannot be held liable as having ratified Deaton's alleged outrageous conduct.
As we stated earlier, however, the notification to Fairley was sufficient to apprise Truswal that Deaton was allegedly invading the plaintiffs' privacy. Therefore, the judgment for Truswal is affirmed as to the outrageous conduct claim and reversed as to the invasion of privacy claim, and the cause is remanded.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
HORNSBY, C.J., and MADDOX, ALMON, SHORES, HOUSTON and STEAGALL, JJ., concur.
JONES, ADAMS and KENNEDY, JJ., concur in part and dissent in part.
KENNEDY, Justice (concurring in part and dissenting in part).
I concur with the majority opinion as it relates to the invasion of privacy count. However, I strongly disagree with this court's holding that the conduct of DuWayne Deaton did not give rise to a cause of action for the tort of outrageous conduct.
The majority seems to hold that the alleged egregious conduct of Deaton would amount only to "insults ...; threats, annoyances, petty oppressions, or other trivialities." To say that Deaton's invitations and suggestions to the female plaintiff employeesto swim in his pool nude with him; to put a "stick on their machines" so that they could masturbate while working; that if one of them would give him 30 minutes with her he would fill her pants up in nine months; to accompany him to the restroom and hold his penis while he urinated; that he could perform sexual intercourse as fast as one of the machines at the plant could operate; and numerous other equally offensive statements and actswere nothing more than "annoyances" or other "trivialities" shocks the conscience.
Sexual harassment in the workplace should be viewed, as it is in many jurisdictions, as a flagrant violation of public policy. The threat of economic coercion in sexual harassment as well as the abuse of power by supervisory personnel, should be sufficient to sustain a cause of action for the tort of outrage. Coupled with the frustration and humiliation of an employee having to fend off the patently offensive gutter humor of a job supervisor, this conduct becomes even more outrageous. This conduct should be recognized by this Court as being "conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." American Road Service Co. v. Inmon, 394 So.2d 361, 365 (Ala.1980).
Other jurisdictions have ruled that conduct similar to that alleged against Deaton is actionable. Bailey v. Unocal Corp., 700 F.Supp. 396, 399 (N.D.Ill.1988), held that a female employee could recover under state tort law where the supervisor allegedly made remarks of a sexual nature and made sexual advances on the employee. A federal *329 district court in Shrout v. Black Clawson Co., 689 F.Supp. 774 (S.D.Ohio 1988), ruled that the Plaintiff was entitled to recover under Ohio law for the tort of outrage where her supervisor, on numerous occasions, made sexual remarks to her, subjected her to various degrees of sexual behavior, including offensively touching her, leaving sexually explicit material on her desk, and looking down her blouse and up her skirt. This case is particularly noteworthy in that the Ohio standard for the tort of outrage is very similar to that of Alabama. In Yeager v. Local Union 20, 6 Ohio St.3d 369, 453 N.E.2d 666 (1983), the court defined the tort of outrage as encompassing conduct that "has been so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Id. at 375, 453 N.E.2d 666. See also Shaffer v. National Can Corp., 565 F.Supp. 909 (E.D.Pa.1983), Rogers v. Loews L'Enfant Plaza Hotel, 526 F.Supp. 523 (D.D.C.1981).
In our modern economy, where a vast majority of women in the work force are there out of necessity to support themselves and their families, conduct directed to them such as that in this case certainly is more than an inconvenience. It would be unconscionable if we were to assume that Deaton's alleged actions should be considered as nothing more than a hazard of the plaintiffs' employment merely because they were female.
For the foregoing reasons, I think the trial court erred in its entry of the summary judgment as to the outrage claim. At the very least, Deaton's alleged conduct poses a jury question, and I would therefore reverse and remand for a jury trial on both the invasion of privacy and the outrage count.
JONES and ADAMS, JJ., concur.
NOTES
[1] Pitts was a personal friend of Fairley's; he had hired her when he was supervisor of the Birmingham plant. The two letters primarily related personal information, and mentioned Deaton's conduct only briefly.