This is an appeal from a judgment based on a directed verdict in favor of Truswal Systems Corporation.[1] The plaintiffs, Jean Busby, Doris Money, Bobbie Pitts, Leisa Livingston Vincent, and Sandra Clements, raise one issue on appeal: whether the trial judge erred in granting the defendant's motion in limine, thereby excluding their testimony with regard to certain transactions and statements made to them by DuWayne Deaton, an employee of the defendant who was deceased at the time of the trial. The defendant, Truswal Systems Corporation (hereinafter "Truswal"), contends that the trial judge did not err because, in light of § 12-21-163, Code of Alabama (1975), otherwise known as the Dead Man's Statute, an interested party is not allowed to testify regarding statements made by a decedent if certain conditions are met. Contending that those necessary conditions were met, Truswal argues that there was no error.
This Court has considered certain issues in this case on a prior occasion. See Busby v. Truswal Systems Corp.,551 So.2d 322 (Ala. 1989). In that case, the plaintiffs (hereinafter collectively referred to as "Busby"), appealed from a summary judgment, arguing that they had offered sufficient evidence to warrant submission to a jury of their claims of invasion of privacy and the tort of outrage. This Court affirmed the summary judgment as it related to the outrage claim; however, it was reversed as it related to the claim for invasion of privacy, and the cause was remanded. See Busby, supra. The facts of the *Page 563 
case that are pertinent to this appeal are set forth in our earlier opinion as follows:
 "Jean Busby, Melanie Hale, Doris Money, and Bobbie Pitts brought this action against DuWayne Deaton and Truswal Systems Corporation, alleging sexual harassment, which they claim constituted outrageous conduct and an invasion of their right to privacy. The plaintiffs amended their complaint to add as additional plaintiffs Lisa Livingston and Sandra Clements. Hale subsequently withdrew as a party plaintiff. Deaton died on March 13, 1987, and was voluntarily dismissed as a defendant. . ..
 "The plaintiffs were employed by Truswal at its Birmingham plant; they, along with Hale, were all of the female employees at the plant, at which about a dozen people worked. Deaton was employed as the supervisor of the Birmingham plant. The plaintiffs allege that, during the time that Deaton was their supervisor, Deaton repeatedly subjected them to sexual harassment. The plaintiffs also allege that they alerted Deaton's immediate supervisor, Frank Fairley, of Deaton's conduct, but that Fairley did nothing to alleviate the situation. Fairley had been the plant supervisor in Birmingham until he was promoted to a position in Texas supervising seven Truswal plants, including the Birmingham plant.
". . . .
 "The question, then, is whether there was an offensive or objectionable prying or intrusion into the plaintiffs' private affairs or concerns Evidence was presented from which a jury could reasonably find that Deaton: (1) invited Busby and Money to swim in his pool in the nude with him; (2) told Busby that his hands were cold and asked if he could put them in her pockets to keep them warm; (3) told the plaintiffs that he would 'put a stick on their machines' so they could masturbate while working; (4) said that he could perform intercourse as fast as one of the machines at the plant could operate; (5) said that he wished that the plaintiffs would come to work braless and wear less clothing; (6) told one of the plaintiffs that if she had not stayed up all night having sex she could do her work properly; (7) told one employee that if she would give him 30 minutes with her that he would fill her pants in nine months for her; (8) acted as if he was going to pinch one plaintiff's breasts with a pair of pliers and with his hands; (9) said that he should send one of the plaintiffs across the street to where a group of men were standing because she stayed sexually aroused all of the time; (10) told one of the plaintiffs that he was very tired and asked her if she would accompany him to the restroom and hold his penis while he urinated; (11) told one of the plaintiffs that her nipples were as large as another employee's entire breasts; (12) attempted to follow one of the plaintiffs into the restroom and when she asked him where he was going, said that he was going to help her; (13) followed one of the plaintiffs one night; (14) said that a table in his office had been damaged when one of the plaintiffs and a male co-employee had sex on top of it; (15) openly stared at the plaintiff's sexual anatomy; (16) put his arm around the plaintiffs, grabbed their arms, and stroked their necks; and (17) made other lewd remarks and gestures to the plaintiffs. . . .
 "Truswal . . . contends that summary judgment was appropriate because, it argues, Truswal had no actual knowledge of Deaton's alleged conduct. This Court has held:
 " 'For [a defendant] to become liable for these alleged intentional torts of its agents, the plaintiffs must offer evidence that the agent's wrongful acts were in the line and scope of his employment, Jessup v. Shaddix, 275 Ala. 281, 154 So.2d 39 (1963); Railway Express Agency v. Burns, 255 Ala. 557, 52 So.2d 177 (1950); Perfection Mattress Spring Co. v. Windham, 236 Ala. 239, 182 So. 6 (1938); Western Union Telegraph Co. v. Hill, 25 Ala. App. 540, 150 So. 709, cert. denied, 227 Ala. 469, 150 So. 711
(1933); or that the acts were in furtherance of the business of [the defendant], Metropolitan *Page 564 Life Ins. Co. v. Carter, 212 Ala. 212, 102 So. 130 (1924); Solmica of the Gulf Coast, Inc. v. Braggs, 285 Ala. 396, 232 So.2d 638 (1970); or that [the defendant] participated in, authorized, or ratified the wrongful acts, Decatur Petroleum Haulers, Inc. v. Germany, 268 Ala. 211, 105 So.2d 852 (1958); C.O. Osborn Contracting Co. v. Alabama Gas Corp., 273 Ala. 6, 135 So.2d 166
(1961).'
 Joyner v. AAA Cooper Transportation, 477 So.2d 364, 365 (Ala. 1985).
". . . .
 "The following evidence applies to the plaintiffs' claim that Truswal ratified Deaton's conduct. All of the plaintiffs except Hale gave depositions that are included in the record. The depositions recite incidents of Deaton's sexual harassment beginning in December 1984, shortly after he began working at Truswal. Pitts and Busby both stated that they told Fairley in December 1984 about Deaton's conduct. Busby said that she told Fairley she had a problem and that Fairley replied, 'I guess it is DuWayne [Deaton].' She testified that Fairley told her, Busby, and Money at that time that he wanted them to try and give Deaton a chance.
". . . .
 "The above-cited evidence presents a fact question on ratification regarding the invasion of privacy claim. The plaintiffs gave Fairley sufficient information to alert him to the possibility that Deaton was engaging in acts that would constitute an invasion of the plaintiffs' privacy, and Fairley's failure to take effective action causing Deaton to stop that conduct could be found to constitute a ratification of Deaton's alleged invasion of privacy."
551 So.2d at 323-24 and 326-27. Upon remand, Truswal filed a motion in limine requesting that, pursuant to the Dead Man's Statute, any statements made by Deaton to the plaintiffs be excluded at trial. That motion was granted and, at trial, Truswal's objections to the plaintiffs' attempts to offer such testimony were upheld. The plaintiffs offered no testimony other than that of Jean Busby and Doris Money, and at the close of their case, the trial judge entered the directed verdict.
Section 12-21-163, Code of Alabama (1975), states:
 "In civil actions and proceedings, there must be no exclusion of any witness because he is a party or interested in the issue tried, except that no person having a pecuniary interest in the result of the action or proceeding shall be allowed to testify against the party to whom his interest is opposed as to any transaction with, or statement by, the deceased person whose estate is interested in the result of the action or proceeding or when such deceased person, at the time of such transaction or statement, acted in any representative or fiduciary relation whatsoever to the party against whom such testimony is sought to be introduced, unless called to testify thereto by the party to whom such interest is opposed or unless the testimony of such deceased person in relation to such transaction or statement is introduced in evidence by the party whose interest is opposed to that of the witness or has been taken and is on file in the case. No person who is an incompetent witness under this section shall make himself competent by transferring his interest to another."
Section 12-21-163 (emphasis added). Truswal contends that because of that portion of the statute emphasized above, the only way the plaintiffs could have offered testimony of statements made to them by Deaton would have been via the testimony of a disinterested third party who overheard Deaton. Because the plaintiffs failed to present such testimony, Truswal contends that it was entitled to the directed verdict.
The plaintiffs' claims against Truswal assert that Truswal ratified the actions of Deaton. Even if the actions of Deaton were outside the line and scope of his employment at the time he allegedly made them, if Truswal is deemed to have ratified those actions and statements, then Truswal should be entitled to the protection of the Dead Man's statute, in particular that portion *Page 565 
of the statute that excludes statements made by a deceased party "act[ing] in any representative or fiduciary relationwhatsoever" to Truswal. See § 12-21-163, supra. For these reasons, the judgment of the trial court is hereby affirmed.
AFFIRMED.
HORNSBY, C.J., and STEAGALL and INGRAM, JJ., concur.
ALMON, J., concurs in the result.
[1] In the appeal, the parties refer to the trial judge's ruling as a summary judgment; however, the judge's ruling was made after a presentation of evidence had been made by the plaintiff. Therefore, in effect, the judge granted a directed verdict in favor of the defendant.