703 So.2d 979 (1997)
Cindy CUNNINGHAM
v.
Jack M. DABBS and ENT Clinic, P.A.
2960110.
Court of Civil Appeals of Alabama.
March 7, 1997.
Rehearing Denied April 18, 1997.
*980 Stephen D. Heninger of Heninger, Burge & Vargo, Birmingham, for appellant.
James C. Gray III and Laura C. Nettles of Lloyd, Schreiber & Gray, P.C., Birmingham, for appellees.
MONROE, Judge.
Cindy Cunningham appeals from a summary judgment in favor of the defendant in her action alleging invasion of privacy, outrageous conduct, and wrongful termination of employment.
Cunningham was employed at ENT Clinic, P.A., where she worked for Dr. Jack M. Dabbs. Dabbs terminated Cunningham's employment on June 10, 1994. On February 28, 1995, Cunningham sued Dabbs, alleging invasion of privacy, defamation, and outrageous conduct in connection with her discharge. On June 7, 1996, Cunningham amended her complaint to assert a claim of wrongful discharge. Dabbs filed a motion for a summary judgment, which the trial court granted. Cunningham appealed to the Supreme Court, which deflected the case to this court pursuant to § 12-2-7(6), Ala.Code 1975.
The evidence submitted to the trial court indicated the following: Cunningham began working at ENT Clinic in 1981. In 1987, when her youngest child was born, Cunningham quit her job at ENT Clinic. She returned to work at ENT Clinic in January 1992. Cunningham testified in her deposition that, during her employment at ENT Clinic, Dabbs frequently rubbed her shoulders and repeatedly made lewd and suggestive comments to her, including suggestions that they have sex, that they should "slip off and go skinny-dipping," that he "[knew] of a better way of getting hot and sweaty that we could enjoy," that he would take her hunting and "we'll find more to do than just wait on a deer to come by," and that he told her "just because you sleep with someone does not mean you have to marry them." She stated that, while out to lunch with a group from work, Dabbs had said that he would fire her if she got married again, but that she thought he was joking. Cunningham also *981 testified that approximately two weeks before Dabbs fired her, he leaned over her as if he were going to whisper something to her and stuck his tongue in her ear.
Cunningham also testified that, on June 10, 1994, she was discussing her marriage plans with several other employees when Dabbs entered the room. Upon learning that she was getting married, Dabbs informed her that she was fired. When she laughed, Dabbs said that he was serious and that she could leave immediately or she could work for two more weeks. Cunningham left work and got married that evening. In his motion for a summary judgment, Dabbs did not dispute any of Cunningham's allegations, nor did he deny that he fired her because she was getting married. Cunningham argues that the trial court erroneously entered a summary judgment as to her claims of wrongful termination, invasion of privacy, and outrageous conduct because, she contends, she presented substantial evidence creating genuine issues of material facts that required submission to a jury.
A summary judgment is proper if there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala.R.Civ.P.; Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988). The party moving for a summary judgment must present, in support of its motion, evidence that would be admissible at trial. Rule 56(e), Ala.R.Civ.P. When the moving party makes a prima facie showing that no genuine issue of material fact exists, the burden shifts to the nonmoving party to rebut the showing by presenting substantial evidence creating a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). Evidence is "substantial" if it is "of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). On review of the trial court's judgment, we are required to view the record in a light most favorable to the nonmovant and to resolve all reasonable doubts in favor of the nonmovant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala.1990).
As for Cunningham's wrongful termination claim, Alabama law retains the general rule that an "at-will" employment contract may be terminated at any time by either party, with or without cause or justification. Hinrichs v. Tranquilaire Hospital, 352 So.2d 1130 (Ala.1977). Thus, employment may be terminated for "a good reason, a wrong reason, or no reason." Id. at 1131 (emphasis in original). Our supreme court has declined to create "public policy" exceptions to this general rule. Id.; Howard v. Wolff Broadcasting Corp., 611 So.2d 307 (Ala.1992), cert. denied, 507 U.S. 1031, 113 S.Ct. 1849, 123 L.Ed.2d 473 (1993). In Howard, the employee, a female who was fired because of her gender, argued that the court should adopt an exception to the "at-will" doctrine based on principles of nondiscrimination. The court stated,
"In refusing to adopt a `public policy' exception, we should not be understood as condoning a person's discharge because of gender. We merely hold that it is the province of the legislature to create such an exception, if it should determine that employees such as Howard, ... should be given the right to sue for damages."
Howard, supra, at 313. See also, Dykes v. Lane Trucking, Inc., 652 So.2d 248 (Ala. 1994).
Cunningham argues that terminating a person's employment based on the exercise of the fundamental right to marry so violates public policy as to support a claim for wrongful discharge. However, the parties agree that Cunningham was an "at-will" employee. Based on the above precedent, we hold that Dabbs's conduct, as reprehensible as it might have been, cannot support a claim for wrongful discharge in an "at-will" employment situation. Therefore, the summary judgment is due to be affirmed as to Cunningham's wrongful termination claim.
Cunningham also argues that she presented substantial evidence in support of her invasion of privacy claim. The tort of invasion of privacy encompasses four types of conduct: 1) the intrusion upon one's physical *982 solitude or seclusion, 2) publicity that violates the ordinary decencies, 3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye, and 4) the appropriation of the plaintiff's personality for commercial use. Phillips v. Smalley Maintenance Services Inc., 435 So.2d 705 (Ala.1983) (citing W. Prosser, Law of Torts, pp. 637-39 (2d ed. 1995)). This case falls under the "intrusion upon seclusion" category, which has been further defined as "the wrongful intrusion into one's private activities in such manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." Phillips, supra, at 708; Restatement (Second) of Torts § 652B (1977). Our Supreme Court stated in Phillips, "[s]ection 652B places liability on one who `intentionally intrudes, physically or otherwise' in the proscribed manner." Phillips, supra, at 710. The court further held that "[o]ne's emotional sanctum is certainly due the same expectations of privacy as one's physical environment." Id. at 711. Additionally, the United States Supreme Court has recognized "marriage" and "sexual concerns" as fundamental rights entitled to privacy protection. Id. at 708 (citing Eisenstadt, Sheriff v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); and Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965)).
Dabbs argues that the facts of the present case make it distinguishable from Phillips. In Phillips, the court held that an employer was liable for invading the privacy of an employee based on the employer's conduct:
"[The employee] was subjected to intrusive demands and threats, including an inquiry as to the nature of sex between her and her husband.... [S]uch incidents were occurring two or three times each week. Additionally, we note from Plaintiff's testimony the repulsive manner in which Smalley's solicitations were made. On one occasion, he struck her across the buttocks with his hand. On still another occasion, he began papering his office window, thus obscuring the view of those in the surrounding area, in pursuit of what he hoped would be the consummation of lurid propositions to Plaintiff. Smalley, aware of the importance to Plaintiff of her regular income, rendered her, in effect, an `economic prisoner.'"
Phillips, supra, at 711.
Dabbs contends that his conduct was not as severe as that involved in Phillips because, he argues, he did not make "coercive sexual demands upon [Cunningham that were] such an `examination' into her `private concerns,' that is, improper inquiries into her personal sexual proclivities and personality," Id. Thus, he argues, he did not commit the tort of invasion of privacy. We reject this argument. We decline to decide the extent or frequency of humiliation and offensive behavior that a person must endure before he or she may recover for invasion of privacy. We do determine that, like the defendant's behavior in Phillips, Dabbs's behavior was "offensive ... and of such a personal nature that ... it would be wrongful, and thus actionable, no matter where it occurred." Id. See also Busby v. Truswal Systems Corp., 551 So.2d 322 (Ala.1989) (reversing a summary judgment for the employer on an invasion of privacy claim when plaintiffs' supervisor had made lewd comments and sexual advances toward plaintiffs).
The evidence discloses offensive behavior by Dabbs, including sexual propositions and inappropriate physical contact. A reasonable jury could determine that Dabbs unreasonably intruded into Cunningham's private affairs; therefore, we hold that whether this conduct was severe enough to constitute an invasion of Cunningham's right to privacy is a question of fact to be determined by a jury.
Cunningham also argues that the trial court erred in entering a summary judgment on her outrage claim. Our Supreme Court first recognized this tort in American Road Service Co. v. Inmon, 394 So.2d 361, 364 (Ala.1981), in which it stated that "an employer, by virtue of his position, possesses no roving license to treat his employee in an extreme and outrageous manner, whether before, during, or after their relationship." Thus, the court held that "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability" and that "the emotional distress thereunder must *983 be so severe that no reasonable person could be expected to endure it.... By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." Id. at 365 (citations omitted).
Dabbs argues that his conduct constituted "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities," which will not support a claim of outrage. Inmon, supra, at 365.
In an analogous case, an employer's conduct that was aimed at forcing a pregnant employee to leave her job and the employer's subsequent termination of her employment because of her pregnancy was determined to present facts that could lead a reasonable jury to conclude that the employer had committed the tort of outrage. Rice v. United Ins. Co. of America, 465 So.2d 1100, 1102 (Ala.1984). In Rice, the court noted that, among other things, the employee alleged a pattern of harassment that lasted for several months and that the conduct was directed toward the illegal purpose of violating the employee's federally protected right to be free from discrimination based on sex. Id. Cunningham alleges a pattern of harassment and a termination of employment in violation of her fundamental right to marry. See, Zablocki v. Redhail, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978) (recognizing the right to marry as fundamental to all individuals). This is not a case in which the employee seeks to assert that the employer is guilty of outrageous conduct for merely discharging an at-will employee, which will not support a claim of outrage. Harrell v. Reynolds Metals Co., 495 So.2d 1381 (Ala.1986). While the facts of this case are in some ways unlike those in Rice, we note that no precise formula can establish what conduct will be deemed "beyond all possible bounds of decency," "atrocious," and "utterly intolerable in a civilized society." Inmon, supra. A reasonable jury could determine that Dabbs's conduct exceeded the bounds of decency established by civilized society; that is what is required for Cunningham to support her outrage claim. Therefore, we hold that the trial court erred by entering the summary judgment as to the outrage claim.
The summary judgment is affirmed as to Cunningham's wrongful discharge claim. It is reversed as to the invasion-of-privacy and outrage claims, and the cause is remanded.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
ROBERTSON, P.J., and THOMPSON, J., concur.
YATES and CRAWLEY, JJ., concur in part and dissent in part.
YATES, Judge, concurring in part and dissenting in part.
I concur with the majority's affirmance of the summary judgment as to the wrongful termination claim. I also concur with the reversal as to Cunningham's invasion of privacy claim. I respectfully dissent, however, from the reversal as to Cunningham's tort of outrage claim. McIsaac v. WZEW-FM Corp., 495 So.2d 649 (Ala.1986).
CRAWLEY, Judge, concurring in part and dissenting in part.
Although I find Dabbs's behavior reprehensible and believe that Cunningham's allegations may have entitled her to relief under federal law, specifically Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., I am compelled by the precedent of our supreme court to dissent from the majority's reversal of the summary judgment in Dabbs's favor on both the outrage and the invasion of privacy claims raised by Cunningham. I concur in the majority's affirmance of the summary judgment on the wrongful termination claim.
The decisions of the Alabama Supreme Court in cases alleging an invasion of privacy on the grounds of sexual harassment in the workplace are in conflict. The majority relies upon Busby v. Truswal Systems Corp., 551 So.2d 322 (Ala.1989), to support its reversal of the summary judgment on Cunningham's invasion of privacy claim. However, the supreme court has affirmed a summary judgment on an invasion of privacy claim under similar circumstances. See McIsaac v. *984 WZEW-FM Corp., 495 So.2d 649 (Ala.1986). Because I find that the allegations raised by Cunningham are more similar to the claims raised by the plaintiff in McIsaac, I would affirm the summary judgment for Dabbs on that count.
Although the State of Alabama has recognized the tort of invasion of privacy since 1948, see Smith v. Doss, 251 Ala. 250, 37 So.2d 118 (1948), the Alabama Supreme Court had the opportunity to further clarify the particular type of invasion of privacy alleged in this case, intrusion upon seclusion, in 1983. See Phillips v. Smalley Maintenance Services, Inc., 435 So.2d 705 (Ala. 1983). Phillips was penned in answer to certified questions from the Eleventh Circuit, and it clearly explained that intrusion upon seclusion encompassed not only an intrusion into physical space but also "`other form[s] of investigation or examination into [a person's] private concerns.'" Phillips, 435 So.2d at 710-11 (quoting Restatement (Second) of Torts § 625B cmt. (b) (1977)). The plaintiff in Phillips alleged that her supervisor called her into his office, locked the door, and questioned her about her sexual habits, including the frequency of sex with her husband and the positions they used. Id. at 707. The same or similar questions were repeated in subsequent interrogations, two or three times weekly, all behind the locked doors of the supervisor's office. Id. Her supervisor also asked if she engaged in oral sex and insisted that she perform oral sex with him under penalty of losing her job. Id. She resisted his persistent advances, but she became increasingly uncomfortable and was unable to adequately perform her work. Id. These facts, according to the court, were sufficient to establish an invasion of privacy because the supervisor made "intrusive and coercive sexual demands [that] were ... an `examination' into [the plaintiff's] `private concerns,' that is, improper inquiries into her personal sexual proclivities and personality." Id. at 711.
In Busby, the plaintiffs alleged that their supervisor, Deaton, sexually harassed them at work, resulting in an invasion of their privacy. Busby, 551 So.2d at 323. Deaton died during the pendency of the litigation; however, the plaintiffs pursued their claims against their employer, Truswal Systems Corporation. Id. The alleged sexually harassing behavior included complaints similar to those alleged by Cunningham (innuendos and propositions) and also included complaints that Deaton "told the plaintiffs that he would `put a stick on their machines' so they could masturbate at work," "said that he should send one of the plaintiffs across the street to where a group of men were standing because she stayed sexually aroused all the time," and "said that a table in his office had been damaged when one of the plaintiffs and a male co-employee had sex on top of it." Id. at 324. The court reversed a summary judgment for Truswal, holding that "[a] jury could reasonably determine from this evidence that Deaton pried or intruded into the plaintiffs' sex lives in an offensive or objectionable manner and thereby invaded their right to privacy." Id.
In contrast, the court determined that an employer's occasional touching of his employee and his repeated advances and propositions were not sufficient to rise to the level of conduct required to constitute invasion of privacy. McIsaac, 495 So.2d at 652. The court stated that "[e]ven the dire affront of inviting an unwilling woman to illicit intercourse has been held by most courts to be no such outrage as to lead to liability." Id. The plaintiff in McIsaac alleged that the owner of the radio station for which she worked propositioned her, made repeated advances, and occasionally touched her on the arm or put his arm around her. Id. at 650.
The allegations made by the plaintiff in McIsaac are remarkably similar to those made by Cunningham in this case. Cunningham has argued that her situation is more analogous to Busby and Phillips, than to McIsaac. She states that Dabbs made sexual comments to her over a span of more than two years and that this fact, coupled with the incident where Dabbs stuck his tongue in her ear, raises his behavior to a more serious level than that of the owner of the radio station in McIsaac. I cannot agree. My review of the decisions on invasion of privacy compels me to find that the allegations made by Cunningham, while clearly sexual harassment, *985 are not sufficient to constitute "an `examination' into [Cunningham's] `private concerns,' that is, [they are not] improper inquiries into her personal sexual proclivities and personality." See Phillips, 435 So.2d at 711 (emphasis added). Therefore, I would affirm the trial court's summary judgment for Dabbs on the invasion of privacy claim.
I would also affirm the trial court's judgment for Dabbs on the outrage claim raised by Cunningham. The majority states that "no precise formula can establish what conduct will be deemed `beyond all possible bounds decency,' `atrocious,' and `utterly intolerable in a civilized society.'" 703 So.2d at 983 (quoting American Road Service Co. v. Inmon, 394 So.2d 361, 365 (Ala.1981)). The majority then concludes that "[a] reasonable jury could determine that Dabbs's conduct exceeded the bounds of decency established by civilized society; that is what is required for Cunningham to support her outrage claim." 703 So.2d at 983. However, the majority overlooks the fact that "the trial court determine[s] in the first instance whether recovery is indicated." Inmon, 394 So.2d at 365. The trial court decided in the first instance in this case that the behavior alleged by Cunningham was not sufficient to rise to the level of outrageous conduct. I would affirm that decision.
In addition, the majority relies on Rice v. United Insurance Co. of America, 465 So.2d 1100, 1102 (Ala.1984), in making its determination that Cunningham has presented substantial evidence of outrage to withstand a motion for summary judgment. In Rice, the plaintiff was a pregnant woman whose supervisor requested that she take disability leave during her pregnancy. Rice, 465 So.2d at 1102. She refused to do so, desiring to work throughout her pregnancy. Id. The supervisor then attempted to force her to leave her position by attempting to influence her husband to convince her to take disability leave; falsely accusing her of incompetence, sometimes in the presence of co-employees and clients; ridiculing her, sometimes in the presence of others; and by withholding important business information from her. Id. The plaintiff was ultimately terminated from employment and two weeks later suffered a miscarriage because of the emotional stress inflicted upon her by her supervisor. Id. The trial court granted the supervisor's motion to dismiss. Id. The supreme court reversed, holding that, under the facts presented, the plaintiff could conceivably prove facts sufficient to support her claim of outrage. Id.
The court indicated that the facts of Rice distinguished it from other cases in which the facts could not support a claim of outrage. Id. Specifically, the court pointed out that (1) the plaintiff in Rice alleged a pattern of activity; (2) that the supervisor's behavior involved several persons, not just the plaintiff; (3) that these outrageous acts were directed towards the plaintiff when the supervisor should have known that severe emotional distress could result in physical harm to the plaintiff; and (4) that the actions of the supervisor were aimed at achieving an illegal purpose  sex or gender discrimination. Id.
The majority states that Cunningham's allegation that Dabbs harassed her and ultimately terminated her in derogation of her fundamental right to marry aligns Cunningham's case with Rice. I disagree. The distinction is that the plaintiff in Rice was harassed for the purpose of preventing her from working during her pregnancy, which violated her right to be free from discrimination in the workplace based upon her gender. However, Cunningham did not produce any evidence that Dabbs's harassment had as its purpose the discouragement of Cunningham's marriage. The fact that Dabbs terminated her in response to her marriage, as the majority correctly states, is insufficient to constitute outrage. See Harrell v. Reynolds Metals Co., 495 So.2d 1381 (Ala.1986).