Although I find Dabbs's behavior reprehensible and believe that Cunningham's allegations may have entitled her to relief under federal law, specifically Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., I am compelled by the precedent of our supreme court to dissent from the majority's reversal of the summary judgment in Dabbs's favor on both the outrage and the invasion of privacy claims raised by Cunningham. I concur in the majority's affirmance of the summary judgment on the wrongful termination claim.
The decisions of the Alabama Supreme Court in cases alleging an invasion of privacy on the grounds of sexual harassment in the workplace are in conflict. The majority relies upon Busby v. Truswal Systems Corp., 551 So.2d 322
(Ala. 1989), to support its reversal of the summary judgment on Cunningham's invasion of privacy claim. However, the supreme court has affirmed a summary judgment on an invasion of privacy claim under similar circumstances. See McIsaac v. *Page 984 WZEW-FM Corp., 495 So.2d 649 (Ala. 1986). Because I find that the allegations raised by Cunningham are more similar to the claims raised by the plaintiff in McIsaac, I would affirm the summary judgment for Dabbs on that count.
Although the State of Alabama has recognized the tort of invasion of privacy since 1948, see Smith v. Doss, 251 Ala. 250, 37 So.2d 118 (1948), the Alabama Supreme Court had the opportunity to further clarify the particular type of invasion of privacy alleged in this case, intrusion upon seclusion, in 1983. See Phillips v. Smalley Maintenance Services, Inc.,435 So.2d 705 (Ala. 1983). Phillips was penned in answer to certified questions from the Eleventh Circuit, and it clearly explained that intrusion upon seclusion encompassed not only an intrusion into physical space but also " 'other form[s] of investigation or examination into [a person's] private concerns.' " Phillips, 435 So.2d at 710-11 (quoting Restatement(Second) of Torts § 625B cmt. (b) (1977)). The plaintiff inPhillips alleged that her supervisor called her into his office, locked the door, and questioned her about her sexual habits, including the frequency of sex with her husband and the positions they used. Id. at 707. The same or similar questions were repeated in subsequent interrogations, two or three times weekly, all behind the locked doors of the supervisor's office.Id. Her supervisor also asked if she engaged in oral sex and insisted that she perform oral sex with him under penalty of losing her job. Id. She resisted his persistent advances, but she became increasingly uncomfortable and was unable to adequately perform her work. Id. These facts, according to the court, were sufficient to establish an invasion of privacy because the supervisor made "intrusive and coercive sexual demands [that] were . . . an 'examination' into [the plaintiff's] 'private concerns,' that is, improper inquiries into her personal sexual proclivities and personality." Id. at 711.
In Busby, the plaintiffs alleged that their supervisor, Deaton, sexually harassed them at work, resulting in an invasion of their privacy. Busby, 551 So.2d at 323. Deaton died during the pendency of the litigation; however, the plaintiffs pursued their claims against their employer, Truswal Systems Corporation. Id. The alleged sexually harassing behavior included complaints similar to those alleged by Cunningham (innuendos and propositions) and also included complaints that Deaton "told the plaintiffs that he would 'put a stick on their machines' so they could masturbate at work," "said that he should send one of the plaintiffs across the street to where a group of men were standing because she stayed sexually aroused all the time," and "said that a table in his office had been damaged when one of the plaintiffs and a male co-employee had sex on top of it." Id. at 324. The court reversed a summary judgment for Truswal, holding that "[a] jury could reasonably determine from this evidence that Deaton pried or intruded into the plaintiffs' sex lives in an offensive or objectionable manner and thereby invaded their right to privacy." Id.
In contrast, the court determined that an employer's occasional touching of his employee and his repeated advances and propositions were not sufficient to rise to the level of conduct required to constitute invasion of privacy.McIsaac, 495 So.2d at 652. The court stated that "[e]ven the dire affront of inviting an unwilling woman to illicit intercourse has been held by most courts to be no such outrage as to lead to liability." Id. The plaintiff in McIsaac alleged that the owner of the radio station for which she worked propositioned her, made repeated advances, and occasionally touched her on the arm or put his arm around her. Id. at 650.
The allegations made by the plaintiff in McIsaac are remarkably similar to those made by Cunningham in this case. Cunningham has argued that her situation is more analogous toBusby and Phillips, than to McIsaac. She states that Dabbs made sexual comments to her over a span of more than two years and that this fact, coupled with the incident where Dabbs stuck his tongue in her ear, raises his behavior to a more serious level than that of the owner of the radio station in McIsaac. I cannot agree. My review of the decisions on invasion of privacy compels me to find that the allegations made by Cunningham, while clearly sexual harassment, *Page 985 
are not sufficient to constitute "an 'examination' into [Cunningham's] 'private concerns,' that is, [they are not] improper inquiries into her personal sexual proclivities andpersonality." See Phillips, 435 So.2d at 711 (emphasis added). Therefore, I would affirm the trial court's summary judgment for Dabbs on the invasion of privacy claim.
I would also affirm the trial court's judgment for Dabbs on the outrage claim raised by Cunningham. The majority states that "no precise formula can establish what conduct will be deemed 'beyond all possible bounds decency,' 'atrocious,' and 'utterly intolerable in a civilized society.' " 703 So.2d at 983 (quoting American Road Service Co. v. Inmon, 394 So.2d 361,365 (Ala. 1981)). The majority then concludes that "[a] reasonable jury could determine that Dabbs's conduct exceeded the bounds of decency established by civilized society; that is what is required for Cunningham to support her outrage claim." 703 So.2d at 983. However, the majority overlooks the fact that "the trial court determine[s] in the first instance whether recovery is indicated." Inmon, 394 So.2d at 365. The trial court decided in the first instance in this case that the behavior alleged by Cunningham was not sufficient to rise to the level of outrageous conduct. I would affirm that decision.
In addition, the majority relies on Rice v. United InsuranceCo. of America, 465 So.2d 1100, 1102 (Ala. 1984), in making its determination that Cunningham has presented substantial evidence of outrage to withstand a motion for summary judgment. In Rice, the plaintiff was a pregnant woman whose supervisor requested that she take disability leave during her pregnancy.Rice, 465 So.2d at 1102. She refused to do so, desiring to work throughout her pregnancy. Id. The supervisor then attempted to force her to leave her position by attempting to influence her husband to convince her to take disability leave; falsely accusing her of incompetence, sometimes in the presence of co-employees and clients; ridiculing her, sometimes in the presence of others; and by withholding important business information from her. Id. The plaintiff was ultimately terminated from employment and two weeks later suffered a miscarriage because of the emotional stress inflicted upon her by her supervisor. Id. The trial court granted the supervisor's motion to dismiss. Id. The supreme court reversed, holding that, under the facts presented, the plaintiff could conceivably prove facts sufficient to support her claim of outrage. Id.
The court indicated that the facts of Rice distinguished it from other cases in which the facts could not support a claim of outrage. Id. Specifically, the court pointed out that (1) the plaintiff in Rice alleged a pattern of activity; (2) that the supervisor's behavior involved several persons, not just the plaintiff; (3) that these outrageous acts were directed towards the plaintiff when the supervisor should have known that severe emotional distress could result in physical harm to the plaintiff; and (4) that the actions of the supervisor were aimed at achieving an illegal purpose — sex or gender discrimination. Id.
The majority states that Cunningham's allegation that Dabbs harassed her and ultimately terminated her in derogation of her fundamental right to marry aligns Cunningham's case withRice. I disagree. The distinction is that the plaintiff in Rice
was harassed for the purpose of preventing her from working during her pregnancy, which violated her right to be free from discrimination in the workplace based upon her gender. However, Cunningham did not produce any evidence that Dabbs's harassment had as its purpose the discouragement of Cunningham's marriage. The fact that Dabbs terminated her in response to her marriage, as the majority correctly states, is insufficient to constitute outrage. See Harrell v. Reynolds Metals Co., 495 So.2d 1381
(Ala. 1986). *Page 986