Marsha Ann BRASSFIELD, Sharon K. Pierson, Plaintiffs,

v.

JACK McLENDON FURNITURE, INC., et al., Defendants.

Civ. A. Nos. 95–D–475–N, 95–D–476–N.

United States District Court, M.D. Alabama, Northern Division.

Oct. 8, 1996.

---

David G. Flack, Brenda Watson, Montgomery, AL, for plaintiffs.

Simeon F. Penton, Carla R. Cole, Michael B. Beers, Montgomery, AL, for defendants.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the Court is defendant, Mark Bodden's ("Bodden"), motions for summary judg-

ment filed May 9, 1996. The plaintiffs, Marsha Ann Brassfield ("Brassfield") and Sharon K. Pierson ("Pierson"), filed a joint response June 11, 1996, and a corrected joint response on June 19, 1996. Subsequently, Bodden filed a motion to strike the affidavit of Marsha Ann Brassfield on September 24, 1996. The plaintiffs filed a supplementary response to Bodden's motion for summary judgment on September 26, 1996. After careful consideration of the evidence in the record, the arguments of counsel, and the relevant case-law, the Court finds that Bodden's motion for summary judgment is due to be granted.

## JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. The parties do not contest personal jurisdiction or venue.

## FACTUAL BACKGROUND

The claims in this case arise from activities which took place while the plaintiffs were employed by McLendon Furniture. Both plaintiffs and Bodden were employed as salespersons by McLendon. The plaintiffs claim that while employed by McLendon they faced continual sexual harassment from management personnel and salespeople. They further allege that they were discriminated against in pay and were eventually discharged on the basis of their sex. Plaintiff Brassfield initiated her suit in August, 1995, and named Jack McLendon Furniture, Inc., Jack McLendon, Lane McLendon, Jeffery Thornell, Walter Yarn and Mark Bodden defendants. Plaintiff Pierson brought suit in April, 1995, and named Jack McLendon Furniture, Inc., Jack McLendon, Lane McLendon, Jeffery Thornell, Braxton Thrash, and Mark Bodden defendants.

### Defendant Bodden

Bodden has been a sales person with McLendon Furniture since 1985. Bodden Depo. at 9. In 1994 his status changed from a full-time employee to a part-time employee. Bodden Depo. at 11. During the time the plaintiffs worked for McLendon furniture, Bodden was not in a management position. Brassfield Depo. at 286. Bodden had no supervisory authority over either of the plaintiffs.

### Plaintiff Pierson

Plaintiff Pierson was hired by McLendon furniture McLendon furniture on March 6, 1993. She was discharged on December 8, 1994. During her employment at McLendon Furniture, Pierson alleges that Bodden (1) asked her to sit on his lap in the presence of other salespersons, Pierson Depo. at 123–26; (2) made sexual remarks about the way she ate bananas, Pierson Depo. at 152–53; (3) made comments about a nude portrait of herself which she had brought to work, Pierson Depo. at 155–61; (4) agreed with the comments of another McLendon employee that he'd like to go skinny dipping with her and he'd like to see her in a wet tee shirt, Pierson Depo. 393–405; (5) speculated about her sex life, Brassfield Depo. at 184; and (6) made comments about her breasts and clothing, Brassfield Depo. at 185.

In July of 1994 and early August of 1994, plaintiff Pierson along with co-plaintiff Brassfield, sought legal advice regarding their sexual harassment claims. Pierson Depo. at 324. On August 26, 1994, Pierson filed a complaint with the Equal Employment Opportunity Commission ("EEOC") in which she alleged discrimination, harassment and unequal pay on the basis of her sex and/or gender. She received a Notice of Right to Sue January 12, 1995. Pierson filed an amended charge with the EEOC on March 2, 1995. In this charge, she added a claim of retaliation for the actions of McLendon employees taken subsequent to the filing of her initial charge. Pierson received a second Notice of Right to Sue on March 2, 1995.

Pierson filed this action on April 7, 1995. Plaintiff Pierson has sued Bodden for eight counts. Count One of the complaint alleges a claim for sexual harassment and hostile work environment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq. Count Two alleges disparate treatment under Title VII and a violation of the Equal Pay Act, 29 U.S.C. 206(d). Count Three

makes an additional claim under Title VII for violations based on gender. Count Four states that, in violation of Title VII, she was retaliated against for filing her initial EEOC charge. Count Five makes a claim for constructive discharge. Count Six makes a claim for intentional infliction of emotional distress and the tort of outrage. Count Seven makes a claim for invasion of privacy. Count Eight makes a claim for defamation.

### Plaintiff Brassfield

Brassfield began working at McLendon Furniture on March 23, 1993. Her employment was terminated on March 24, 1994. During her employment at McLendon, Brassfield alleges that Bodden (1) made comments about her clothes and breasts, referring to the latter as "tits" and "hooters," Brassfield Depo. at 294–98; (2) made comments about female customers' breasts and thighs in front of her, Brassfield Depo. at 177–78; and (3) asked about her sexual preferences, what her favorite positions were during sex, and whether she liked whips. Brassfield Aff. at 6.[1]

During her employment at McLendon Furniture, Brassfield declared bankruptcy. She filed a petition in bankruptcy September 7, 1993 and received a discharge on March 14, 1994.

In July of 1994 and early August of 1994, plaintiff Brassfield along with co-plaintiff Pierson, sought legal advice regarding their sexual harassment claims. Pierson Depo. at 324. Brassfield filed a charge with the EEOC on August 29, 1994 in which she alleged sexual harassment and disparate pay. She received her Notice of Right to Sue from the EEOC on January 12, 1995.

Brassfield initiated this action April 7, 1995. Brassfield has sued defendant Mark Bodden for seven counts.[2] In Count One she claims sexual harassment and the existence of a hostile work environment in violation of

Title VII. Count Two alleges disparate pay in violation of Title VII and the Equal Pay Act. Count Three makes an additional claim under Title VII for violations based on gender. Count Four claims retaliation for opposing practices made unlawful under Title VII. Count Five makes a claim for invasion of privacy. Count Six makes a claim for defamation. Count Seven makes a claim for intentional infliction of emotional distress and the tort of outrage.[3]

### DISCUSSION

Initially, the Court will resolve the legal contentions raised by the parties.

### Joint and Several Liability

█ The plaintiffs contend that the actions of all of the other named defendants should be attributed to Bodden to determine his individual liability. Pl.'s Corrected Resp. to Def.'s Mot. for Summ. J. at 25–26. In support of this contention the plaintiffs cite *National Security Fire & Casualty Co. v. Bowen*, 447 So.2d 133 (Ala.1983). However, *Bowen* stands only for the familiar proposition that a master is liable for the acts of its servants. *Id.* at 139–42. In the instant case, Bodden is not the master, and is not to be held liable for the acts of his co-defendants.

█ Joint and several liability is appropriate where the concurrent wrongful acts of multiple defendants cause the plaintiff injury. *See Butler v. Olshan,* 280 Ala. 181, 191 So.2d 7, 17 (1966). A plaintiff may maintain a joint and several action based on the concerted or independent actions of defendants. *See Huntsville v. Davis,* 456 So.2d 72, 74 (Ala. 1984). In Alabama, there is no apportionment of damages among joint tortfeasors. *Matkin v. Smith,* 643 So.2d 949, 951 (Ala. 1994). However, when, as in the instant case, independent actors make allegedly wrongful acts at clearly separate times, and the issues of proximate cause and/or damage

---

1. Brassfield also alleges that Bodden suggested they go skinny dipping together. This statement is not competent evidence. *See* discussion of Def.'s Mot. to Strike *infra*.

2. Brassfield's Complaint actually contains nine counts. However, Counts Seven (assault) and

Eight (assault and battery) are not directed at Bodden.

3. This is actually Count Nine of Brassfield's Complaint.

apportionment are far from indeterminate, joint and several liability cannot be said to lie. *Accord Fireman's Fund American Insurance Co. v. Coleman,* 394 So.2d 334, 346 (Ala.1980) (employer liability under breach of Workman's Comp. Act does not impose liability on all co-employees).

### Motion to Strike Plaintiff Brassfield's Affidavit

Bodden has moved to strike the Brassfield's affidavit submitted to the Court in conjunction with plaintiffs' response to Bodden's motion for summary judgment. Bodden contends that Brassfield's affidavit is an attempt to alter, and is inconsistent with, her earlier deposition testimony.

■ The Eleventh Circuit has made it clear that a party cannot avoid summary judgment on the basis of a "sham" affidavit. *See Van T. Junkins and Associates v. U.S. Industries,* 736 F.2d 656 (11th Cir.1984). The job of the District Court is to distinguish "discrepancies [between an affidavit and earlier deposition testimony] which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence." *Tippens v. Celotex Corp.,* 805 F.2d 949, 953 (11th Cir.1986). The *Tippens* Court went on to state "[a]n affidavit may only be disregarded as a sham 'when a party has given clear answers to unambiguous question which negate the existence of any genuine issue of material fact ... [and that party attempts] thereafter [to] create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.'" *Id.* at 954 (quoting *Van T. Junkins,* 736 F.2d at 657). Only those affidavit statements which are "inherently inconsistent" with earlier deposition testimony should be stricken. *See W.C. Lane v. Celotex Corp.,* 782 F.2d 1526, 1531 (11th Cir. 1986); *see also Moore v. Beneficial National Bank U.S.A.,* 876 F.Supp. 1247, 1253–54 (M.D.Ala.1995).

Plaintiff Brassfield relies on her affidavit to substantiate two of the incidents of harassment which Brassfield specifically attributes

4. The other two incidents of harassment relied on by plaintiff Brassfield are contained within

to Bodden.[4] *See* Pl.'s Supp.Resp. to Mot. for Summ.J. at 8. First, she claims that Bodden and another McLendon employee suggested that she and plaintiff Pierson go skinny dipping with them. Brassfield Aff. at 6. Second, she claims Bodden inquired about her favorite positions during sex, whether she liked to be spanked during sex, and suggested that she liked using whips during sex. *Id.*

In her deposition, Brassfield was specifically asked about the incidents of harassment which made up her complaint with respect to Bodden. Brassfield Depo. at 293. In response to this question, Brassfield recounted several incidents of harassment but did not mention either of the two disputed allegations contained in her affidavit. *Id.* at 292–319. Further, to the extent that Brassfield mentioned the disputed affidavit allegations during her deposition testimony, she made no connection between Bodden and the disputed incidents. With respect to the "skinny dipping" incident, Brassfield testified:

Q. What's the next thing you remember that forms the basis of your complaint?

A. Another incident occurred. Jeff [defendant Jeff Thornell] approached me on the sales floor and asked me would I be interested in going with him during lunch to a place he called Seven Bridges road and go skinny-dipping.

\* \* \* \* \* \*

Q. Okay. Tell me exactly what you remember—This was Jeff?

A. Yes, sir.

\* \* \* \* \* \*

Q. Who else was present when he said this?

A. No one.

Brassfield Depo. at 96–98. Brassfield's deposition testimony related to the other disputed affidavit statement, that Bodden made comments about sexual preferences, spanking and whips, came in response to a question asking Brassfield to recall all the incidents which made up the basis of her complaint against Jeff Thornell. She testified:

her earlier deposition testimony.

A. No sir. I haven't had any contact with Mr. Thornell since I departed with McLendon. One particular day we were—there was a lot of us sitting around the sales desk. I know Mark Bodden was there. I know Sharon was there. I'm almost positive that Ray and Braxton were there and probably Walter. I just can't remember if Walter was there or not. But Jeff had a yardstick in his hand, and he came and sat down in the chair—in one of the chairs in front of the sales desk, and he was sitting sideways to the sales desk. And he looked over at me and he said, I bet you like being spanked while you are having sex. And I could feel my face—I mean, I could feel myself turning red. And he laughed kind of a snicker like. And he said, look, Bodden, it must be true. She's turning red.

Brassfield Depo. at 170–71. Also, when Brassfield was asked about other incidents making up her defamation claim she testified:

Q. What about Mark Bodden?

A. When he asked me about my breasts and my sexual preferences.

*Id.* at 232.

■ With respect to the "skinny-dipping" allegation in the affidavit, the Court finds that Brassfield's earlier deposition testimony is inherently inconsistent with her affidavit allegation. Brassfield's deposition testimony clearly indicated that it was Jeff Thornell who asked her to go skinny dipping. Her deposition testimony unambiguously relates this incident of harassment solely to Jeff Thornell. Therefore, with respect to this allegation in Brassfield's affidavit, the Bodden's motion to strike is due to be granted.

■ With respect to the affidavit statement about sexual preferences, whips, and sexual positions, the Court finds that Brassfield's earlier deposition testimony merely creates an issue of credibility. Although Brassfield did not include these statements when specifically asked about the incidents which made up her claim against Bodden, her deposition testimony does not definitively rule out the possibility that Bodden made these statements. Therefore, with respect to this allegation in Brassfield's affidavit, Bodden's motion is due to be denied.

The Court will address the admissibility of any other relevant affidavit statements as they arise in the discussion of Brassfield's claims.

### The Effect of Plaintiff Brassfield's Bankruptcy

Bodden contends that plaintiff Brassfield is estopped from raising all of her claims because she failed to list them among the assets of her bankruptcy estate. Brassfield filed a petition in bankruptcy on September 7, 1993. Brassfield Depo. at 256. Her bankruptcy case was discharged March 14, 1994. Brassfield Depo. at 256. Although Brassfield alleges that the sexual harassment began as early as July of 1993, Brassfield Depo. at 198–90, she first sought the advice of counsel with regards to the possibility of a claim in late July or early August 1994.[5] Brassfield

5. Bodden points to Brassfield's deposition testimony that she and plaintiff Pierson discussed the possible existence of a claim while still employed at McLendon furniture as evidence that Brassfield's claim arose prior to her discharge in bankruptcy. Brassfield Dep. p. 282, Def.'s Mot. for Summ.J. at p. 7. However, Brassfield also indicated that she was unsure when these discussions took place. Further, any discussion between Brassfield and plaintiff Pierson about potential claims was speculative.

Q. Now, did you and Sharon ever discuss the possibility that you may have claims against McLendon furniture and all of these other parties before you left the employment of McLendon Furniture?
A. A couple of times we talked about the treatment that we were being received and that possibly there would be some remedy.

Q. Can you help me with regards to time, with regards to those discussions when you and Sharon first got together and just discussed the possibility that there might be a remedy?
A. I cannot remember a particular time. Most of the conversations occurred after I was discharged from McLendon Furniture.
Q. But it is your testimony, is it not, that to the best of your recollection you did have some discussion before your discharge?
A. Only in a very—I don't know how I can say—We didn't sit down and talk about it at length. Just in a matter on one sentence of surely there is something that we can do. I mean, we didn't actually meet and decide to do this while I was working there. That really occurred after I was discharged.

Depo. at 258. Brassfield filed her complaint with the EEOC August 29, 1994. Brassfield Depo. at 256–57.

### 1. Applicable Law

The duties of a debtor in bankruptcy are prescribed by 11 U.S.C. § 521 (1978). Among these duties are the requirement that the debtor "file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities." 11 U.S.C. § 521(1). Upon the filing of the bankruptcy petition, an estate composed of the debtor's assets is created. 11 U.S.C. § 541. This estate includes "all legal or equitable interest in property as of the commencement of the case," 11 U.S.C. § 541(a)(1), as well as "[a]ny interest in property the estate acquires after the commencement of the estate." 11 U.S.C. § 541(a)(7).

▬▬▬ Despite the fact that § 541(a)(7) appears to mandate the inclusion of post-commencement property in the bankruptcy estate, a distinction is drawn between petitions filed under Chapter 7 and those filed under Chapters 11 and 13. In an individual case filed under Chapter 7, two estates are created—the chapter 7 bankruptcy estate, and a new, post-petition estate. Into this post-petition estate goes "property which the debtor receives, after filing and which is not governed by the exceptions in § 541(a)(5)." *In Re Griseuk*, 165 B.R. 956, 958 n. 3 (Bankr. M.D.Fla.1994). Thus, unlike a case filed under Chapter 11 or 13, the Chapter 7 debtor retains possession of property acquired after the commencement of the bankruptcy case. *See In Re Ellis*, 108 B.R. 262, 268 (D.Haw. 1989).

▬▬▬ A debtor who fails to schedule a claim (a legal interest) which is the property of the bankruptcy estate may be equitably or judicially estopped from later asserting that claim. Equitable estoppel applies when the debtor has a claim against a creditor, but fails to schedule that claim thereby prejudicing the creditor and impinging the integrity of the bankruptcy proceeding. *See Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414 (3d Cir.1988).[6] Judicial estoppel is applied to preserve the integrity of the judicial system. *Id.* at 419. A debtor may use the judicial system (the bankruptcy process) to free himself or herself from the claims of debtors. As part of that process the bankruptcy court relies on the representations of the debtor with respect to whether he or she has claims or interests arising out of the matters before the court. If the debtor, after receiving a discharge in bankruptcy, turns around and utilizes the judicial system to pursue claims he or she had previously misrepresented or failed to reveal, the debtor commits a fraud upon the courts and will be estopped.[7] *See Payless Wholesale Distributors, Inc. v. Alberto Culver (P.R.) Inc.*, 989 F.2d 570 (1st Cir.1993); *Oneida*, 848 F.2d at 419–20.

### 2. Analysis

▬▬ Bodden asserts there are two bases which prevent Brassfield from now asserting her claims. First, he asserts that the doctrine of judicial estoppel bars Brassfield's claims. Def.'s Mot. for Summ.J. p. 6. Second, he contends that even if Brassfield's claims are viable, this Court lacks jurisdiction over those claims. Def.'s Mot. for

---

Brassfield Dep. at 262–63. Even if Brassfield's claims did arise prior to her discharge in bankruptcy, she is not now estopped from raising these claims. *See infra* discussion.

6. In *Oneida*, a Chapter 11 debtor had a claim for breach of contract against United Jersey Bank; United Jersey Bank was one of the debtor's primary creditors. 848 F.2d at 415. Relying on the § 521 duty to schedule assets and a Chapter 11 duty to file a disclosure statement containing adequate information, the court held that the debtor was equitably estopped from raising its claims against the bank. *Id.* at 417–18. The court reasoned that because the bankruptcy court and the creditor bank relied on the debtor's

scheduled assets the application of equitable estoppel was required. *See Id.* at 418.

7. The requirement that the subsequent claim be related to the matters discussed in the bankruptcy proceeding serves two purposes. First, it identifies those claims which are amenable to resolution before the bankruptcy court. Second, it acts to conserve judicial resources by avoiding duplicative litigation and judicial inquiry. Finally, the requirement helps to identify those claims that the debtor knew of, or reasonably should have known of, during the pendency of the bankruptcy proceeding.

Summ. J p. 9. As the Court will demonstrate, neither of those bases apply here.

At the outset, the Court notes that it is unclear when Brassfield's causes of action accrued. Although it is likely Brassfield had a viable cause of action prior to her discharge in bankruptcy, the Court cannot say that Brassfield knew/should have known that these causes had accrued such that her failure to schedule these claims was a deception of the bankruptcy court and the judicial system.[8]

In support of his argument that Brassfield is judicially estopped from asserting her claims, Bodden relies heavily on the Alabama Supreme Court's decision in *Luna v. Dominion Bank of Middle Tennessee, Inc.*, 631 So.2d 917 (Ala.1993). However, *Luna* is factually distinct from the instant case in two important respects. In *Luna*, the debtor wanted to assert unscheduled claims against a creditor and related parties who had been involved in the completed bankruptcy proceedings. *Id.* at 918. Concomitantly, the debtor's subsequent claims were related to the matters before the bankruptcy court. *See id.* These factors, the singular identity of the creditor/defendant, and the existence of related matters in the bankruptcy proceeding and post-bankruptcy claims were critical to the application of judicial estoppel in *Oneida. See* discussion of applicable law *supra.* The *Luna* Court cited *Oneida* in holding that judicial estoppel should apply.

Unlike *Luna*, in the instant case, Bodden was not involved in Brassfield's bankruptcy proceeding and hence, did not rely on Brassfield's failure to schedule her claims. Further, Brassfield's claims against Bodden are not related to the matters considered by the bankruptcy. Thus, in the instant case, Brassfield's omission of her claims against Bodden from her bankruptcy petition neither prejudice Bodden nor significantly impinge the integrity of the judicial system. Consequently, the Court finds that judicial estoppel does not apply. *Oneida*, 848 F.2d at 419–20.

Further, the Court finds that judicial estoppel does not bar Brassfield's claims because she had no duty to disclose them. The Court finds that Brassfield's claims did not accrue prior to September 7, 1993, the date she petitioned for bankruptcy. Because Brassfield's claims accrued after the commencement of her Chapter 7 bankruptcy case, they do not become part of the bankruptcy estate. *See In Re Ellis,* 108 B.R. 262, 268 (D.Haw.1989). Thus, Brassfield did not fail to disclose an asset of the bankruptcy estate and is not now estopped from asserting her claims against Bodden.

■■■ For the same reasons just discussed, Bodden's contention that this Court lacks jurisdiction over Brassfield's claims is erroneous. Because the bankruptcy estate never "owned" Brassfield's claims, Bodden's arguments that the bankruptcy court never abandoned these claims is inapposite.[9] Def.'s Mot. for Summ.J. at 9. Therefore, all other prerequisites having been satisfied, this Court has jurisdiction over Brassfield's claims.

## STANDARD OF REVIEW

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the exis-

---

8. In so finding the Court refutes Bodden's suggestion that a reasonable person in Brassfield's position would have known she had a contingent claim prior to her discharge in bankruptcy. *See* Def.'s Mot. for Summ.J. pp. 8–9.

9. Even if a post-commencement claim was included in the bankruptcy estate, the Court does not find that, as a matter of law, Brassfield's claims accrued prior to her bankruptcy discharge.

tence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 587, 106 S.Ct. at

1356. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Id.; see also Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11.

## A. Plaintiffs' Title VII Claims and EPA Claim

■ As this Court has previously held, individual liability may not be imposed under a Title VII cause of action. *Smith v. Capitol City Club of Montgomery,* 850 F.Supp. 976 (M.D.Ala.1994). The plaintiffs are in agreement with this proposition. Pl.'s Resp. to Def.'s Mot. for Summ.J. at 25. Accordingly, with respect to the plaintiffs' federal claims, their Title VII and EPA claim, Bodden's motion for summary judgment is due to be granted.

## B. Plaintiffs' State Tort Claims

### 1. Plaintiffs' Outrage Claims

■ The Supreme Court of Alabama recognized the tort of outrage in *American Road Service Co. v. Inmon,* 394 So.2d 361 (Ala.1980). Under the tort of outrage, liability is imposed for "unprivileged, intentional or reckless conduct of an extreme and outrageous nature, and only that which causes severe emotional distress." *Id.* at 365. The court emphasized the severity of the conduct required to support an outrage claim: "conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Id.*

■ To establish the tort of outrage, the plaintiff must prove three elements: "(1) the actor intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from his conduct; (2) the conduct was extreme and outrageous; and (3) the distress was severe." *Moore v. Spiller Associated Furniture, Inc.,* 598 So.2d 835 (Ala.1992) (quoting *Perkins v. Dean,* 570 So.2d 1217, 1219 (Ala.1990)).

The Supreme Court of Alabama summarized the exceedingly narrow scope of the tort as follows:

[T]he tort of outrage is a very limited cause of action that is available only in the most egregious circumstances. As a consequence, this court has held in a large majority of the outrage cases reviewed that no jury question was presented ... In fact, in the 12 years since *Inmon* was decided, all cases in which this court has found a jury question on an outrage claim have fallen within only three categories: 1) cases having to do with wrongful conduct in the context of family burials ... 2) a case where insurance agents employed heavy handed, barbaric means in attempting to coerce the insured into settling an insurance claim ... 3) a case involving egregious sexual harassment. (emphasis added)

*Thomas v. BSE Indus. Contractors, Inc.*, 624 So.2d 1041, 1044 (Ala.1993).

In *Busby v. Truswal Systems Corp.*, 551 So.2d 322, 324 (Ala.1989), the Alabama Supreme Court held that a plant supervisor's extreme sexual harassment of his female employees created a jury question as to liability for the tort of outrage. In *Busby*, the court found that there was evidence of at least seventeen incidents of harassment.[10] The court found there was evidence that the harasser,

(1) invited Busby and Money to swim in his pool in the nude with him; (2) told Busby his hands were cold and asked if he could put them in her pockets to keep them warm; (3) told the plaintiffs that he would 'put a stick on their machines' so they could masturbate while working; (4) said that he could perform intercourse as fast as one of the machines at the plant could operate; (5) said that he wished that the plaintiffs would come to work braless and wear less clothing; (6) told one of the plaintiffs that if she had not stayed up all night having sex she could do her work properly; (7) told one employee that if she would give him 30 minutes with her that he would fill her pants in nine months for her;

(8) acted as if he was going to pinch one plaintiff's breasts with a pair of pliers and with his hands; (9) said that he should send one of the plaintiffs across the street to where a group of men were standing because she stayed sexually aroused all of the time; (10) told one of the plaintiffs that he was very tired and asked her if she would accompany him to the restroom and hold his penis while he urinated; (11) told one of the plaintiffs that her nipples were as large as another employee's entire breasts; (12) attempted to follow one of the plaintiff's into the restroom and when she asked him where he was going, said that he was going to help her; (13) followed one of the plaintiff's one night; (14) said that a table in his office had been damaged when one of the plaintiffs and a male co-employee had sex on top of it; (15) openly stared at the plaintiffs' sexual anatomy; (16) put his arm around the plaintiffs, grabbed their arms, and stroked their necks; and (17) made other lewd remarks and gestures to the plaintiffs.

*Busby*, 551 So.2d at 324. The court found that these actions, considered altogether, could constitute extreme and outrageous conduct. *Id.*

 The Court finds that with respect to plaintiff Brassfield's claim for outrage, Bodden's conduct was not extreme and outrageous. Plaintiff Brassfield has adduced evidence that Bodden made comments about her breasts, looked at her breasts, asked her about her sexual preferences, asked whether she liked whips, asked about her favorite sexual positions, Brassfield Aff. at 6, Brassfield Depo. at 170–71, 232, made comments about female customers' breasts and thighs in front of her *Id.* at 177–78, and made comments about plaintiff Pierson's sexual activities in front of her *Id.* at 185–86. This evidence is insufficient to sustain a claim for outrage.[11] *See McIsaac v. WZEW–FM Corp.*, 495 So.2d 649 (Ala.1986). Therefore, with respect to plaintiff Brassfield's claim for

---

**10.** The *Busby* Court noted the incidents of harassment in the context of deciding the plaintiff's invasion of privacy claim. The Court presumes this same evidence was utilized by the *Busby* Court to assess the plaintiff's outrage claim. *See* 551 So.2d at 324.

**11.** This analysis would be unchanged even if the Court considered the statement in Brassfield's affidavit that Bodden had asked her to go skinny dipping with him.

outrage, Bodden's motion is due to be granted.

[22] The Court finds that with respect to plaintiff Pierson's claim for outrage, Bodden's conduct was not extreme and outrageous. Plaintiff Pierson has adduced evidence that Bodden asked her to sit on his lap, Pierson Depo. at 123–26, made sexual remarks about the way she ate bananas, *Id.* at 152–53, made comments about a nude portrait she brought to work, *Id.* at 155–61, agreed with comments made by Jeff Thornell that he'd like to go skinny dipping with her and that he'd like to see her in a wet tee shirt, *Id.* at 393–405, made comments in front of plaintiff Brassfield about plaintiff Pierson's sexual activities, Brassfield Depo. at 185, and made comments about the size of her breasts, *Id.* at 186. While the Court regards Bodden's behavior as distasteful and rude, it finds that such behavior is not extreme and outrageous as defined and explicated by the Alabama Supreme Court. *See McIsaac supra.* Therefore, with respect to plaintiff Pierson's claim for outrage, Bodden's motion is due to be granted.

### 2. Plaintiffs' Defamation Claims

■■■ A plaintiff may establish a prima facie case of defamation by proving the following:

1) a false and defamatory statement concerning the plaintiff; 2) an unprivileged communication of that statement to a third party; 3) fault amounting to at least negligence; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by publication of the statement.

*Ledbetter v. United Ins. Co. of America,* 837 F.Supp. 381, 387 (M.D.Ala.1993), *aff'd,* 59 F.3d 1247 (11th Cir.1995) (quoting *McCaig v. Talladega Publishing Co.,* 544 So.2d 875, 877 (Ala.1989)); *see also Drill Parts and Serv. Co. v. Joy Mfg. Co.,* 619 So.2d 1280, 1289 (Ala.1993) (quoting same case).

■■■ "The question of 'whether the communication is reasonably capable of a defamatory meaning is a question, in the first instance, for the court' and 'if the communication is not reasonably capable of a defama-

tory meaning, there is no issue of fact, and summary judgment is proper.'" *Drill Parts and Serv. Co. v. Joy Mfg. Co.,* 619 So.2d 1280, 1289–90 (Ala.1993) (quoting *Harris v. School Annual Publishing Co.,* 466 So.2d 963, 964–65 (Ala.1985)). Any statement from which a reasonable person might infer a false factual connotation which would harm the victim's reputation in the eyes of the community, is "capable of a defamatory meaning." *Clark v. America's First Credit Union,* 585 So.2d 1367, 1370–71 (Ala.1991).

■■■ The comments made by Bodden are primarily statements of personal opinion. Bodden's statements regarding plaintiff Pierson, while crude and inappropriate, did not connotate false facts about Pierson. Similarly Bodden's invitation for Pierson to "sit on his lap" cannot reasonably be construed to make a factual statement about Pierson. However, Pierson contends that Bodden's statements are nevertheless actionable, because they falsely impute a want of chastity to Pierson. Alabama law provides, "[a]ny words written, spoken, or printed of any woman falsely imputing to her a want of chastity are actionable without proof of special damages." Ala.Code § 6–5–181 (1975). Thus, the question before the Court is whether Bodden's comments somehow imputes sexual misconduct to Pierson.

Concomitant with the Court's finding that Bodden's statements were statements of personal opinion is a finding that he did not impute sexual misconduct to Pierson. The majority of Bodden's statements are reflect on Bodden and Bodden's character rather than on Pierson. *Bodden* liked the way Pierson ate her bananas; *Bodden* would like it if Pierson wore a wet tee-shirt; *Bodden* thought Pierson's breasts were large and clothes revealing; *Bodden* would like Pierson to sit on his lap. The situation would be different if Bodden's comments falsely implied that Pierson had acted in accordance with Bodden's desires, but they do not. The statements made by Bodden are not actionable and thus, with respect to Pierson's defamation claim, Bodden's motion is due to be granted. *Accord Tonsmeire v. Tonsmeire,* 281 Ala. 102, 199 So.2d 645 (1967) (statements that wife was having two different

affairs were actionable); *Tingle v. Worthington*, 215 Ala. 126, 110 So. 143 (1926) (statement that woman was "a red light district woman" was actionable); *Murphree v. State*, 13 Ala.App. 254, 69 So. 237 (1915) (statements that unmarried woman was pregnant and had given birth or had an abortion were actionable).

■ The Court's analysis of plaintiff Pierson's defamation claim applies equally to plaintiff Brassfield's defamation claim. Bodden's comments about Brassfield's breasts and clothing are not actionable. Bodden's questions about Brassfield's sexual preferences were just that, questions—they were not statements imputing sexual misconduct to Brassfield. Brassfield, however, maintains that Bodden defamed her when he joked about the fact that a McLendon's employee had called Brassfield his "market wife." [12] Pl.'s Corrected Resp. at 32. However, by making such jokes Bodden cannot be said to have adopted the false statement made by another McLendon Furniture employee. Rather, by making jokes, Bodden was essentially acknowledging the falsity of the statements. There is no evidence in the record that Bodden call Brassfield Thornell's "market wife", or that he communicated such a statement to third parties. Thus, with respect to Brassfield's defamation claim, Bodden's motion is due to be granted.

**3. Plaintiffs' Invasion of Privacy Claims**

■ Alabama law recognizes the tort of invasion of privacy. The Supreme Court of Alabama, in an opinion written upon certification from the Circuit Court of Appeals for the Eleventh Circuit, held that this tort includes four separate "wrongs":

1) the intrusion upon the plaintiff's physical solitude or seclusion; 2) publicity which violates the ordinary decencies; 3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; and 4) the appropriation of some element of the plaintiff's personality for a commercial use.

*Phillips v. Smalley Maintenance Services,* 435 So.2d 705, 708 (Ala.1983) (citations omitted). The Alabama Supreme Court later refined this definition:

[there are] two separate standards for finding the tort of an invasion of privacy: 1) If there has not been public or commercial use or publication, then the proper standard is whether there has been an 'intrusion upon the plaintiff's physical solitude or seclusion,' or a 'wrongful intrusion into one's private activities in such manner so as to outrage or to cause mental suffering, shame or humiliation to a person of ordinary sensibilities' and 2) if there has been public or commercial use or publication of private information, then the proper standard is whether there has been 'unwarranted publicity,' 'unwarranted appropriation or exploitation of one's personality,' publication of private affairs not within the legitimate concern of the public, an intrusion into one's 'physical solitude or seclusion,' the placing of one in a 'false but not necessarily defamatory position in the public eye,' or an 'appropriation of some element of [one's] personality for commercial use.'

*Hogin v. Cottingham,* 533 So.2d 525, 530–31 (Ala.1988) (citations omitted). Thus, the tort of invasion of privacy may arise when there is either a "public and commercial use or publication" or a "wrongful intrusion into one's private activities or solitude or seclusion." *Johnson v. Corporate Special Services,* 602 So.2d 385, 387 (Ala.1992).

Here, the plaintiffs are claiming that Bodden wrongfully intruded in their privacy, physical solitude, or seclusion. The *Hogin* Court elaborated on a wrongful intrusion claim:

'[T]here must be something in the nature of prying or intrusion' and 'the intrusion must be something which would be offensive or objectionable to a reasonable person. The thing into which there is intrusion or prying must be, and be entitled to

---

12. Bodden moved to strike the allegation in plaintiff Brassfield's affidavit that Bodden made jokes about Brassfield being called a "market wife" by another McLendon Furniture employee. Brassfield Aff. at 5. Because the Court finds that the affidavit statement is not inherently inconsistent with earlier deposition testimony, Bodden's motion, with respect to this statement is due to be denied.

be, private.' Two primary factors are considered in 'determining whether or not an intrusion which effects access to private information is actionable. The first is the means used. The second is the defendant's purpose for obtaining the information.'

533 So.2d at 531 (citations omitted).

Plaintiff Pierson claims Bodden made comments about her dress, her breasts, a nude portrait which she brought to work, asked her to sit in his lap, and agreed with another McLendon employee who asked Pierson if she'd go skinny dipping. The Court finds that none of these actions constitutes prying into the private matters of Pierson's life. Bodden's comments made in response to things willingly revealed by Pierson (i.e. the portrait, her dress) involved no "prying," and further, did not involve Pierson's private affairs. Similarly, Bodden's act of agreeing with the comments of another employee cannot be considered prying.

Although the record is unclear, when construed in the light most favorable to the plaintiff, the record indicates that Bodden speculated about Pierson's sex life. Brassfield Depo. at 184. While such speculation would implicate Pierson's private life, the Court finds no evidence of prying. There is no evidence that Bodden used dishonest, coercive, or surreptitious means to ask questions or obtain information about Pierson. In fact, there is no evidence that Bodden attempted in any manner to obtain private information from Pierson. Consequently, Bodden's speculation is not actionable. *See Hogin*, 533 So.2d at 531. Accordingly, with respect to Pierson's invasion of privacy claim, Bodden's motion is due to be granted.

Plaintiff Brassfield claims Bodden made comments about her breasts and clothing and asked about her sexual preferences. The analysis performed with respect to Pierson's claim leads the Court to conclude that Brassfield's claim is similarly non-viable. The Court would add that even if Bodden's actions constituted "prying" into the private aspects of the plaintiffs' lives, summary judgment would still be due to be granted be-

cause the Court finds that the invasion is not such that it would cause shame, humiliation or suffering to a person of ordinary sensibilities. *Compare McIsaac v. WZEW–FM Corp.*, 495 So.2d 649, 650 (Ala.1986) (repeatedly asking employee to "be available" and trying to kiss her is not actionable) and *Logan v. Sears, Roebuck & Co.*, 466 So.2d 121, 123–24 (Ala.1985) (statement that employee was as queer as a three dollar bill would not cause mental suffering, shame, humiliation) with *Phillips v. Smalley Maintenance Services*, 435 So.2d 705 (Ala.1983) (questioning employee two or three times a week for period of three months behind "locked doors" about employees sexual experiences, and later making coercive sexual advances towards employee whereupon employee suffered severe mental trauma created cause of action for invasion of privacy). Thus with respect to Brassfield's invasion of privacy claim, Bodden's motion is due to be granted.

### ORDER

Accordingly, and for the foregoing reasons, the court finds that defendant, Mark Bodden's, motion for summary judgment is due to be granted. A judgment in accordance with this memorandum opinion will be entered separately.